**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

| | |
|---|---|
| **STATE FARM FIRE AND CASUALTY COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 11-2056-STA-tmp** |
| ) | |
| **VINCENT BONETTI and TEIG PEPPERS,** ) | |
| ) | |
| **Defendants.** ) | |

---

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

Before the Court is Plaintiff's Motion for Summary Judgment (D.E. # 22), filed on

February 14, 2012. Defendant Teig Peppers ("Defendant") filed a Response (D.E. # 25) on

February 17, 2012. Plaintiff filed a Reply (D.E. # 26) on February 23, 2012. For the reasons set

forth below, Plaintiff's Motion is **GRANTED**.

### BACKGROUND

Plaintiff filed its Complaint for Declaratory Judgment on January 25, 2011. (D.E. # 1.)

The Complaint requests the Court to determine the meaning of Defendant's insurance coverage

with Plaintiff and whether Plaintiff is required to cover Defendant for actions arising from a civil

assault and battery suit ("the Civil Case") between him and Defendant Vincent Bonetti

("Bonetti"). (*Id.*) Defendant filed an Answer to the Complaint on March 15, 2011 (D.E. # 11),

but because Bonetti failed to do so, Plaintiff filed a Motion for Entry of Default against Bonetti

that same day. (D.E. # 12.) The Clerk entered default on March 17, 2011 (D.E. # 13), and

Plaintiff filed a Motion for Default Judgment (D.E. # 14) on March 18, 2011. The Court granted

the Motion on April 12, 2011 (D.E. # 16), and Defendant is thus the sole remaining Defendant in

this case. Defendant filed a Motion to Stay the case pending resolution of his state court

criminal trial for aggravated assault, but the Court denied his Motion on December 27, 2011.

(D.E. # 20.) Plaintiff then filed the Motion for Summary Judgment now before the Court on

February 14, 2010. (D.E. # 22.)

The following facts are undisputed for purposes of this Motion. Defendant's

homeowner's insurance policy ("the Policy") contains certain definitions in Section I. (D.E. #

10-1, at 16.) It defines "bodily injury" as "physical injury, sickness, or disease to a person. This

includes required care, loss of services, and death resulting therefrom." (*Id.*) Bodily injury does

not include "emotional distress, mental anguish, humiliation, mental distress, mental injury, or

any similar injury unless it arises out of actual physical injury to some person." (*Id.*) An

"occurrence" means "an accident, including exposure to conditions, which results in bodily

injury or property damage during the policy period." (*Id.*) "Property damage" means "physical

damage to or destruction of tangible property, including loss of use of this property." (*Id.*)

"Accident" is not defined in the Policy. It is undisputed that Defendant is insured under the

Policy and that Plaintiff issued the Policy to Defendant before the events underlying the Civil

Case. (Pl.'s Statement of Material Undisputed Facts, D.E. # 22-2, at 1.)

The Policy also contains a list of Liability Coverages in Section II. Coverage L covers

personal liability and provides that "[i]f a claim is made or a suit is brought against an insured

for damages because of bodily injury or property damage to which this coverage applies, caused

by an occurrence, [Plaintiff] will pay up to [its] limit of liability for the damages for which

[Defendant] is legally liable and provide a defense at [its] expense by counsel of [its] choice." (D.E. # 10-1, at 23.)  However, Section II also contains exclusions, one of which notes that Coverage L does not apply to "bodily injury or property damage which is either expected or intended by the insured or which is the result of willful and malicious acts of the insured."  (*Id.*)

Bonetti began the Civil Case against Defendant in Shelby County Circuit Court on October 27, 2010.  (D.E. # 1-3, at 1; Pl.'s Statement of Material Undisputed Facts, D.E. # 22-2, at 1.)  The Civil Case complaint alleges that Defendant "physically attacked" Bonetti.  (*Id.*)  It also states that "the conduct of Defendant was willful, wanton, premeditated, malicious, intentional, or reckless to such an extent as to subject Defendant to punitive damages."  (D.E. # 1-3, at 1.)  Rather than asserting a cause of action under Tennessee's tort common law, the Civil Case's complaint alleges that Defendant violated Tenn. Code Ann. §§ 39-13-101 and 39-13-102, which codify the crimes of assault and aggravated assault.  (*Id.* at 1-2.)  Bonetti then lists his injuries allegedly caused by Defendant, which include injuries to his "head, neck, back, knee, wrist, hip, [and] entire central nervous and emotional systems."  (*Id.* at 2.)  Defendant also faces criminal charges for aggravated assault in Shelby County Criminal Court.  (Pl.'s Statement of Material Undisputed Facts, D.E. # 22-2, at 2.)

During the early morning hours of May 15, 2010, an altercation took place between Defendant and Bonetti at a karaoke bar in Shelby County known as Windjammer.  (*Id.*)  Defendant and a female acquaintance, Jennifer Davis ("Davis"), were preparing to leave the bar when Davis decided to say goodbye to the karaoke DJ.  (*Id.*)  Defendant indicated to Davis, while she was saying goodbye to the DJ, that he was going to leave.  (*Id.*)  At that time, Davis

motioned to Defendant and asked him to stand next to her and pretend that they were talking, thereby putting Defendant's back to Bonetti.  (*Id.*)

At his deposition, Defendant testified that Bonetti pushed him into Davis, after which Defendant turned around and, after a short exchange of words, pushed Bonetti out of the way. (*Id.*)  The two men fell and the altercation continued.  (*Id.*)  However, Bonetti testified at his deposition that he was standing with his back to the DJ immediately prior to the altercation.  (*Id.* at 3.)  According to him, Defendant shoved him from behind onto the corner of a table, and Bonetti turned around to face Defendant.  (*Id.*)  Defendant then picked up Bonetti and rammed him full speed into a built-in booth.  (*Id.*)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that the

> court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[1]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[2]  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but instead must present some "specific facts showing that there is a genuine issue for trial."[3]  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[4]  These facts

---

[1]     Fed. R. Civ. P. 56(a).

[2]     *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[3]     *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[4]     *Matsushita*, 475 U.S. at 586.

must be more than a scintilla of evidence and must meet the standard of whether a reasonable

juror could find by a preponderance of the evidence that the nonmoving party is entitled to a

verdict.[5]  When determining if summary judgment is appropriate, the Court should ask "whether

the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-side that one party must prevail as a matter of law."[6]

Summary judgment must be entered "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial."[7]  In this Circuit, "this requires the nonmoving party

to 'put up or shut up' [on] the critical issues of [his] asserted causes of action."[8]

### ANALYSIS

In Tennessee, the "construction and validity of a contract are governed by the law of the

place where the contract [wa]s made."[9]  This principle is known as *lex loci contractus*, meaning

that "a contract is presumed to be governed by the law of the jurisdiction in which it was

executed absent contrary intent."[10]  Plaintiff submits that the Policy "was issued to a Tennessee

resident, covering real property in Tennessee" and that Tennessee law governs the interpretation

---

[5]     *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[6]     *Id.* at 251-52.

[7]     *Celotex*, 477 U.S. at 322.

[8]     *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[9]     *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 466 (Tenn. 1973).

[10]     *Vantage Tech., LLC v. Cross*, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999).  A contract is executed or made in the state in which it was signed.  *See* In re *Estate of Davis*, 184 S.W.3d 231, 233-35 (Tenn. Ct. App. 2004).

of the Policy.[11]  Defendant does not contest this assertion.  Therefore, the Court will apply

Tennessee law as it interprets the Policy.

Because "insurance policies are, at their core, contracts,"[12] a court's interpretation of an

insurance policy follows the same principles as interpreting a contract.[13]  When an insurance

policy's language is clear, courts must not look beyond the four corners of the instrument.[14]  In

construing contracts, the words expressing the parties' intentions should be given their usual,

natural, and ordinary meaning.[15]  Only when a provision is ambiguous will a court construe its

interpretation against the drafter of the agreement.[16]  Thus, when an insurance policy is

ambiguous, and that ambiguity limits the coverage of an insurance policy, that language must be

construed against the company and in favor of the insured.[17]

### The Meaning of "Occurrence"

---

[11]    (Pl.'s Mot., D.E. # 22-1, at 5.)

[12]    *See, e.g.*, *Artress v. State Farm Fire & Cas. Co.*, 429 S.W.2d 430, 432 (Tenn. 1968).

[13]    *Christenberry v. Tipton*, 160 S.W.3d 487, 492 (Tenn. 2005).

[14]    *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998).

[15]    *Id.* (citing *Ballard v. North Am. Life & Cas. Co.*, 667 S.W.2d 79 (Tenn. Ct. App. 1983)).

[16]    *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 612 (Tenn. 2006).

[17]    *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993).

In the liability insurance policy context, the Tennessee Supreme Court has adopted the definition of "accident" to mean "an event not reasonably foreseen, unexpected and fortuitous."[18] Although the court noted that "while negligent acts can and in fact often do support a claim of accident as this word is used in insurance policies," accident and negligence are not synonymous, and "[t]he nature of the action, that is whether it be tort, contract, or otherwise, may be a factor in determining if there has been an accident under a given factual situation."[19] Moreover, the court noted with approval that "the term 'accident' in liability insurance contracts generally does not include any injury deliberately or willfully done."[20] In the commercial general liability ("CGL") context, the Tennessee Supreme Court adopted the definition of "accident" used in the liability insurance context and held that the term "accident" as used in the CGL meant "an unforeseen or unexpected event."[21] Foreseeability is evaluated from the point of view of the insured.[22]

In *Gassaway*, the court construed the word "accident" to include the "negligent acts of the insured causing damage which is undesigned and unexpected."[23] In *Moore*, the CGL defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the

---

[18]    *Gassaway v. Travelers Ins. Co.*, 439 S.W.2d 605, 608-09 (Tenn. 1969).

[19]    *Id.* at 607.

[20]    *Id.*

[21]    *Moore*, 216 S.W.3d 302, 308 (Tenn. 2007).

[22]    *Gassaway*, 439 S.W.2d at 608-09.

[23]    *Moore*, 216 S.W.3d at 308 (quoting *Gassaway*, 439 S.W.2d at 607).

same general harmful conditions."[24]  That definition is similar to the Policy's definition of "occurrence" in this case.

In its Motion, Plaintiff argues that Bonetti's injuries were not the result of an "occurrence" under the Policy and that, as such, Plaintiff is not required to provide coverage.[25] In the alleged absence of guidance regarding the term "occurrence" in the personal liability coverage context, Plaintiff turns to commercial general liability contracts and argues that the term "accident" as defined in a liability policy's definition of "occurrence" means "an unforeseen or unexpected event."[26]

In response, Defendant agrees with Plaintiff's definition of "accident" but argues that, based on Defendant and Bonetti's conflicting testimony, Plaintiff cannot demonstrate that Defendant intended to harm Bonetti when he made physical contact with him.[27]  In reply, Plaintiff asserts that the motivation behind Defendant's actions in pushing Bonetti, whether in self defense or as initial aggressor, are irrelevant to this case and need not be decided.[28]  Plaintiff states that Defendant's pushing of Bonetti cannot be considered an accident and that it cannot be an occurrence as defined in the Policy.[29]

---

[24]     *Id.*

[25]     (Pl.'s Mot., D.E. # 22-1, at 7.)

[26]     (*Id.*)

[27]     (Def.'s Resp., D.E. # 25, at 5.)

[28]     (Pl.'s Reply, D.E. # 26, at 5.)

[29]     (*Id.*)

The Court finds that the Tennessee Supreme Court has already defined which events constitute "accidents" under liability insurance policies: an accident is "an event not reasonably foreseen, unexpected and fortuitous." Accordingly, because the Policy does not define "accident," the Court adopts this definition of "accident" and will apply it to its evaluation of whether the events underlying the Civil Case constitute an "occurrence" so as to trigger Plaintiff's duty to defend Defendant.

## Plaintiff's Duty to Defend

An insurance company's duty to defend depends solely on the allegations contained in the underlying complaint.[30] Accordingly, the insurer has a duty to defend when the underlying complaint alleges damages that are within the risk covered by the insurance contract and for which there is a potential basis for recovery.[31] The duty to defend arises if even one of the allegations is covered by the policy.[32] Where the complaint does not state facts sufficient to clearly bring the case within the insurance policy's coverage, the insurer is obligated to defend if a cause of action under the complaint could potentially be within the policy's coverage.[33]

In its Motion, Plaintiff argues that it has no duty to defend Defendant in the Civil Case under the facts as alleged in the Civil Case complaint.[34] Plaintiff notes that the Civil Case

---

[30] *St. Paul Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 835 (Tenn. 1994).

[31] *Id.*

[32] *See Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996).

[33] *Dempster Bros., Inc. v. U.S. Fid. & Guar. Co.*, 388 S.W.2d 153, 156 (Tenn. Ct. App. 1964).

[34] (Pl.'s Mot., D.E. # 22-1, at 9.)

complaint contains allegations of Defendant's assault on Bonetti. Despite the Civil Case complaint's citation to Tennessee's criminal assault and aggravated assault statutes, Plaintiff interprets the Civil Case complaint as bringing claims for assault and battery.[35] Plaintiff then asserts that, because assault and battery are intentional torts under Tennessee common law, and intentional conduct does not qualify as an "occurrence" because it is not unforeseen by a defendant, the Policy does not apply to Defendant's actions as alleged in the Civil Case.[36] Defendant's self defense claims have no bearing on the application of the Policy because Defendant still acted intentionally with the knowledge or expectation that the injury would result.[37]

Alternatively, Plaintiff argues that, even if Defendant's conduct qualifies as an occurrence under Coverage L, Defendant is excluded from coverage under Section II because he intended the bodily injury suffered by Bonetti.[38] In light of controlling case law, Plaintiff asserts that assault and battery, even if characterized as self-defense, are intentional actions and can be precluded by an insurance policy's intentional acts exclusion.[39] Plaintiff points out that the only occasion where reckless conduct is alleged in the Civil Case complaint is where Bonetti states that Defendant acted with the various mental states required to sustain punitive damages.[40] As

---

[35]     (*Id.* at 10.)

[36]     (*Id.*)

[37]     (*Id.* at 11.)

[38]     (Pl.'s Mot., D.E. # 22-1, at 11.)

[39]     (*Id.* at 12.)

[40]     (*Id.*)

such, Plaintiff alleges that this brief mention is insufficient to remove Defendant's Civil Case from the exclusion because the Civil Case complaint does not contain any factual allegations of reckless or accidental conduct.[41]

In response, Defendant points to the differences between Bonetti and Defendant's versions of how the altercation occurred and argues that the Court cannot find that Defendant intended to inflict bodily harm on Bonetti.[42] Moreover, Defendant focuses on the Civil Case complaint's mention of reckless conduct as bringing the Civil Case outside the scope of the Policy's exclusion.[43] He cites to the Civil Case's reliance on Tennessee's criminal assault statutes as demonstrating that Bonetti could recover if Defendant acted recklessly, but his reckless conduct would not be covered by the Policy's exclusion.[44]

In reply, Plaintiff argues that "in the civil context of tort litigation, assault and battery are not governed by the criminal statute standards. Rather, assault and battery are common law causes of action that have clearly been deemed intentional acts excluded by intentional act exclusions under Tennessee law."[45] Plaintiff points out that, if the Court accepts Defendant's argument, "every insurer will owe a defense any time a word such as 'reckless' is thrown into a complaint regardless of the . . . factual allegations of the complaint."[46]

---

[41] (*Id.*)

[42] (Def.'s Resp., D.E. # 25, at 5.)

[43] (*Id.* at 5-6.)

[44] (*Id.* at 6-7.)

[45] (Pl.'s Reply, D.E. # 26, at 3.)

[46] (*Id.* at 4.)

At the outset, the Court finds that the events underlying the Civil Case are not an "accident" and thus are not covered by Defendant's Coverage L of Defendant's liability coverages. Even accepting Defendant's version of the events leading up to the altercation, Defendant's contact with Bonetti leading up to their fall to the floor was not accidental. At his deposition, Defendant testified that his back was to Bonetti and that Bonetti pushed him into Davis.[47] After this initial shove, Bonetti and Defendant exchanged words, and Defendant then tried to push Bonetti out of his way by making a motion with his left hand.[48] The two then fell to the floor and an altercation ensued.[49]

Thus, although Bonetti's initial contact with Defendant could be classified as accidental, Defendant's shove of Bonetti with his left hand was not something Defendant did not reasonably foresee. Indeed, Defendant testified that he pushed Bonetti to escape because he "saw [Bonetti's] people coming" and "felt like [he] was about to be jumped on."[50] This testimony indicates that, when viewed from the perspective of Defendant, he intended to push Bonetti, and the push of Bonetti and the resulting altercation and physical injuries could not have been unforeseen by Defendant. Therefore, the Court finds that Defendant's push of Bonetti was foreseeable, expected, and not fortuitous: it was not an "accident" as defined in Tennessee's insurance liability jurisprudence. Nor was the subsequent altercation accidental. Therefore,

---

[47] (Dep. of Def. Peppers, D.E. # 23-1, at 12.)

[48] (*Id.* at 13.)

[49] (*Id.* at 13-14.)

[50] (*Id.* at 13.)

Defendant's actions do not count as an "occurrence" under the Policy, and Coverage L was not triggered by the events underlying the Civil Case.

The Court's conclusion is the same even if it limits its evaluation to the Civil Case complaint. The Civil Case complaint does not indicate that Defendant acted accidentally. Rather, a physical attack is generally an intentional act, and the Civil Case complaint does not contain facts indicating that Defendant's attack was unforeseen by him. Accordingly, under the Civil Case complaint, Defendant's conduct was not an "accident," and the Civil Case complaint's allegations do not trigger Coverage L.

Even if the events underlying the Civil Case qualified as an "accident"—and thus an "occurrence," thereby triggering Coverage L—Section II's exclusion would apply, and Plaintiff would not be required to defend Defendant in the Civil Case. The facts of the underlying Civil Case complaint consist of a single sentence: "Defendant . . . physically attacked [Bonetti] causing [Bonetti] severe personal injuries."[51] Such a physical attack would necessarily be intentional. Although the Court acknowledges that Bonetti's attorney has couched the Civil Case complaint's cause of action in Tennessee's assault and aggravated assault criminal statutes, the Court finds that the Civil Case complaint is actually asserting a cause of action for assault and battery. Bonetti would be unable to sue for a violation of the criminal code in circuit court, and he has not pled negligence per se.

---

[51]     (Civil Case Compl., D.E. # 1-3, at 1.)

"It is well settled in Tennessee that assault and battery, if proven, are intentional torts;"[52] therefore, the bodily injury arising from the physical assault pled by Bonetti, if successful, would have to have been intended by Defendant.  This intention triggers Section II's coverage exclusion for bodily injury "which is either expected or intended by the insured."  Moreover, the Civil Case complaint contains only intentional torts.  Although Bonetti alleged that Defendant acted recklessly, this allegation arose in the context of Bonetti's request for punitive damages.  Recklessness is not an element of the torts charged, and if Defendant's conduct was merely reckless, he will not be liable for any of the civil causes of action which appear to be alleged in the Civil Case complaint.  As such, Bonetti's mere allegation of recklessness, when confined to the punitive damages context, is insufficient to trigger Plaintiff's duty to defend.  Accordingly, the Court finds that even if the events at Windjammer were an "accident," and thus an "occurrence" under Coverage L, Defendant would be excluded from coverage under Section II because he acted intentionally.  Therefore, Plaintiff has no duty to defend Defendant, and its Motion for Summary Judgment is **GRANTED**.

### Plaintiff's Duty to Indemnify

An insurer's duty to defend is separate and distinct from the insurer's obligation to pay claims under the insurance policy.[53]  A duty to indemnify is narrower than a duty to defend; thus, if a duty to defend does not exist, a duty to indemnify cannot exist either.[54]

---

[52]     *McCall v. Nat'l Health Corp.*, No. M2004-00261-COA-R3-CV, 2006 WL 2523970, at *3 (Tenn. Ct. App. Aug. 31, 2006).

[53]     *Jackson Hous. Auth. v. Aut-Owners Ins. Co.*, 686 S.W.2d 917, 922 (Tenn. Ct. App. 1984).

[54]     *Moore*, 216 S.W.3d at 305.

In its Motion, Plaintiff argues that because it has no duty to defend, it has no duty to indemnify Defendant.[55]  Plaintiff appears to incorporate the same arguments it made regarding its lack of duty to defend Defendant in the Civil Case and avers that the Civil Case complaint demonstrates that Defendant's conduct was intentional.[56]  Accordingly, Plaintiff requests the Court to find that there is no duty to indemnify Defendant in the Civil Case.[57]  Defendant does not respond to these arguments, but the Court assumes that arguments similar to those presented above.  In its Reply, Plaintiff avers that because the duty to indemnify is narrower than the duty to defend, if no duty to defend exists, Plaintiff does not owe a duty to indemnify to Defendant.[58]

Because the Court has found that Plaintiff has no duty to defend Defendant in the Civil Case, and the duty to indemnify is narrower than the duty to defend, the Court finds that Plaintiff has not duty to indemnify Defendant.  Accordingly, Plaintiff's Motion for Summary Judgment is **GRANTED** in this regard.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: April 13, 2012.

---

[55]    (Pl.'s Mot., D.E. # 22-1, at 13.)

[56]    (*Id.* at 13-14.)

[57]    (*Id.* at 14.)

[58]    (Pl.'s Reply, D.E. # 26, at 4.)